Ronald C. Redcay (SBN 67236)
Ronald.Redcay@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, Suite 4400
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Attorneys for Defendants
Solvay Pharmaceuticals, Inc.
& Unimed Pharmaceuticals, Inc.

*[Attorneys for Other Defendants Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>UNIMED PHARMACEUTICALS, INC., et al.,<br><br>　　　　　Defendants. | Case No. CV 09-00215 MRP (PLAx)<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 11, 2009<br>Time: 10:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Room: Courtroom 12 |

| | |
|---|---|
| 1 | Mark W. Ryan (Admitted *Pro Hac Vice*) |
|   | mryan@mayerbrown.com |
| 2 | John Roberti (Admitted *Pro Hac Vice*) |
|   | jroberti@mayerbrown.com |
| 3 | Christopher J. Kelly (Admitted *Pro Hac Vice*) |
|   | cjkelly@mayerbrown.com |
| 4 | MAYER BROWN LLP |
|   | 1909 K Street, N.W. |
| 5 | Washington, D.C. 20006 |
|   | Telephone: (202) 263-3000 |
| 6 | Facsimile: (202) 263-3300 |
| 7 | |
|   | Attorneys for Defendant |
| 8 | Solvay Pharmaceuticals, Inc. |
|   | & Unimed Pharmaceuticals, Inc. |
| 9 | |
| 10 | Douglas B. Adler (SBN 130749) |
|    | douglas.adler@skadden.com |
| 11 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM |
|    | 300 South Grand Ave., Suite 3400 |
| 12 | Los Angeles, CA 90071 |
|    | Telephone: (213) 687-5120 |
| 13 | Facsimile: (213) 621-5120 |
| 14 | Steven C. Sunshine (Admitted *Pro Hac Vice*) |
|    | steven.sunshine@skadden.com |
| 15 | Julia K. York (Admitted *Pro Hac Vice*) |
|    | julia.york@skadden.com |
| 16 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|    | 1440 New York Ave., N.W. |
| 17 | Washington, D.C. 20005 |
|    | Telephone: (202) 371-7000 |
| 18 | Facsimile: (202) 393-5760 |
| 19 | Attorneys for Defendant |
|    | Watson Pharmaceuticals, Inc. |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 11, 2009 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom No. 12 (2nd Floor, Spring Street level), United States Courthouse, 312 North Spring Street, Los Angeles, California, Defendants Unimed Pharmaceuticals, L.L.C., Solvay Pharmaceuticals, Inc., and Watson Pharmaceuticals, Inc., will move the Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' First Amended Class Action Complaint for failure to state a claim upon which relief can be granted.

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities, the pleadings, records, and papers on file with the Court; and on any such further or other matter the Court deems proper at the hearing on this motion;

PLEASE TAKE FURTHER NOTICE that this motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 24, 2009.

Dated: April 6, 2009

By /s/ Ronald C. Redcay /RMR/
Ronald C. Redcay
ARNOLD & PORTER LLP

Mark W. Ryan
John Roberti
Christopher J. Kelly
MAYER BROWN LLP

(Signed with permission for Unimed Pharmaceuticals, L.L.C., Solvay Pharmaceuticals, Inc., and Watson Pharmaceuticals, Inc.)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Defendants Unimed Pharmaceuticals, Inc., Solvay Pharmaceuticals, Inc., and Watson Pharmaceuticals, Inc. (the "Defendants") respectfully move this Court to dismiss the First Amended Complaints ("FACs") of Plaintiffs Meijer, Inc., Louisiana Wholesale Drug Co., and Rochester Drug Co-Operative, Inc. (collectively "Plaintiffs") for failure to state a claim.[1]

Plaintiffs' FACs not only follow on from the related case *FTC v. Watson Pharmaceuticals, Inc.*, Civ. No. 09-CV-00598 MRP (PLAx), but also mimic the vast majority of the allegations in the First Amended Complaint in that case ("FTC FAC"). Accordingly, and for the reasons set forth in the memorandum filed in Case No. 09-00598 (attached hereto as Appendix 1), the Defendants respectfully request this Court to dismiss Plaintiffs' FACs.

Two arguments merit separate treatment from those in Appendix 1. First, the Defendants' settlement agreements and business arrangements (collectively, the "Agreements") are not *per se* illegal. (*See* FAC ¶¶ 12, 142.) Second, Plaintiffs' vague allegations of purely speculative harms fail adequately to allege injury-in-fact.

## II. FACTUAL BACKGROUND

The factual allegations in this case are to a large degree copied from the FTC FAC; Defendants therefore respectfully refer the Court to the summary of the allegations in Appendix 1.[2] (Appendix 1 at 3-7.) On February 2, 2009 and

---

[1] Because the allegations in all three plaintiffs' complaints are virtually identical, throughout this Memorandum, Defendants' citations to "FAC" will refer to the complaint in *Meijer, Inc. v. Unimed Pharmaceuticals, Inc.*, Civ. No. 09-00215 MRP (PLAx).

[2] Curiously, although they have not had access to the fruits of the FTC's investigation, Plaintiffs quote party documents that have never been produced to them, and indeed make more aggressive allegations than the FTC evidently felt able to make
(cont'd)

February 3, 2009, Plaintiffs filed suit in this case. In their FACs, filed on March 6, 2009, Plaintiffs assert that, but for the business arrangements, Solvay would have settled the litigations with Watson and Par/Paddock and licensed them to enter even earlier than 2015, the date the Agreements provided. (*Id.* ¶¶ 10, 113.) Like the FTC, Plaintiffs allege that Defendants' business arrangements contain a component of disguised compensation designed to induce a later entry date than might otherwise have occurred. (*Id.*) Even taking Plaintiffs' allegations as true, the Plaintiffs have failed to state an actionable claim.

## III.   ARGUMENT

### A.   Defendants' Agreements Are Not *Per Se* Illegal.

As explained in Appendix 1, every court that has reviewed Plaintiffs' "reverse payment" theory has held that final Hatch-Waxman patent settlements—including ones involving reverse payments—are lawful unless they exceed the exclusionary scope of the patent. (Appendix 1 at 8-11.) Plaintiffs nonetheless allege that the Agreements are *per se* illegal horizontal market allocation agreements. (FAC ¶¶ 12, 142.) This argument has been squarely rejected not only by all three of the federal appellate courts that examined similar agreements, but by the FTC itself. (Appendix 1 at 10-11.)

In fact, recent judicial experience with settlements of Hatch-Waxman patent litigation indicates that the very presence of a patent makes a *per se* rule highly inappropriate. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1305 (11th Cir. 2003) (reversing district court's holding that interim settlement agreements were territorial market allocations; "the district court did not consider that the '207 patent gave Abbott the right to exclude others from making, using, or selling [its NDA product] until October of 2014, when it is due to expire."); *Schering-*

---

in good faith. (*See, e.g.*, FAC ¶ 80 ("Knowing it could not exclude Watson and Par/Paddock through any legal means . . . Solvay considered ways to settle the patent litigation").)

*Plough Corp. v. FTC*, 402 F.3d 1056, 1064 (11th Cir. 2005) (noting that the District Court in *Valley Drug* declined to apply a *per se* rule "for a rather simple reason: one of the parties owned a patent") (citing *Valley Drug*, 344 F.3d at 1304); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 206 (2d Cir. 2006) ("[W]e decline to conclude . . . that reverse payments are *per se* violations of the Sherman Act such that an allegation of an agreement to make reverse payments suffices to assert an antitrust violation."); *see also* Daniel A. Crane, *Exit Payments in Settlement of Patent Infringement Lawsuits: Antitrust Rules and Economic Implications*, 54 Fla. L. Rev. 747, 753-54 (2002) (noting that *per se* rule does not apply in the overlay of patent laws because "[s]ociety is deemed better off with an innovative monopolist than with no monopolist at all").

The one case that facially appears to support Plaintiffs' contention, *In re Cardizem CD Antitrust Litigation*, 332 F.3d 896 (6th Cir. 2003), does not address final settlements of litigation, and has been distinguished by courts and the FTC alike on that basis, among others. The FTC distinguished *Cardizem* in its opinion in the *Schering-Plough* case as inapplicable to final settlements of litigation and criticized the *Cardizem* approach:

> Unlike the present case, *Cardizem* involved an interim rather than a final settlement, so it would be more difficult to claim that the agreement was ancillary to an efficient disposition of the litigation. The opinion did not need to consider a claim that the generic was paid by the pioneer for licenses rather than for delayed entry. We also do not believe the opinion has taken adequate account of Supreme Court decisions that mandate a more nuanced approach. *See, e.g., California Dental Ass'n v. FTC*, 526 U.S. 756 (1999); *National Collegiate Athletic Ass'n v. Board of Regents of the University of Oklahoma*, 468 U.S. 85 (1984).

Op. of the Comm'n, *In the Matter of Schering-Plough Corp.*, Dkt No. 9297 at 13 n.26 (public version) (Dec. 8, 2003),[3] *vacated by Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005); (*see also* Appendix 1 at 11).

      This consensus of the courts is wholly consistent with the general rule that a *per se* rule is inappropriate where, as here, courts have little experience with the conduct being challenged. *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 349 n.19, 102 S. Ct. 2466, 73 L. Ed. 2d 48 (1982) ("[A] *new per se* rule is not justified until the judiciary obtains considerable rule-of-reason experience with the particular type of restraint challenged."); *White Motor Co. v. United States*, 372 U.S. 253, 260, 83 S. Ct. 696, 9 L. Ed. 2d 738 (1963) (declining to apply *per se* rule when "[w]e need to know more than we do about the actual impact of these [vertical territorial limitations] to decide whether they have such a 'pernicious effect on competition and lack . . . any redeeming virtue'") (citing *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S. Ct. 514, 2 L. Ed. 2d 545 (1958)); *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100 n. 21, 104 S. Ct. 2948, 82 L. Ed. 2d 70 (1984) (noting that "judicial inexperience with a particular arrangement counsels against extending the reach of per se rules"); *see Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784-85 (9th Cir. 1996) ("The Supreme Court has repeatedly explained that the per se approach is not to be readily expanded to new arrangements or to business relationships with which the courts are inexperienced.") (citing *NCAA*, 468 U.S. at 100). The FTC itself rejected *per se* treatment of patent settlement agreements in its *Schering-Plough* case. See Op. of the Comm'n, *In the Matter of Schering-Plough*, Dkt. No. 9297 at 7 ("We review the agreements in this case under the rule-of-reason standard . . .").

      Far from agreeing that these settlements have a "pernicious effect on competition and lack . . . any redeeming virtue," *N. Pac. Ry.*, 356 U.S. at 5, courts have

---

[3] The FTC opinion is also available at the FTC web site: http://www.ftc.gov/os/adjpro/d9297/031218commissionopinion.pdf.

upheld these agreements in the face of antitrust challenges. (*See* Appendix 1 at 8-11.) Further, Plaintiffs' proposed rule condemning reverse payments would *itself* have anticompetitive effects. (*Id.* at 16-18.) Plaintiffs therefore fall far short of alleging the "manifestly anticompetitive" conduct that would justify application of the *per se* rule here. *Continental T.V. Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50, 97 S. Ct. 2549, 53 L. Ed. 2d 568 (1977).

### B. Plaintiffs Have Failed to Allege Injury-in-Fact.[4]

To bring a federal claim Plaintiffs must satisfy the jurisdictional prerequisites of Article III standing: injury-in-fact, causation, and redressability. *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) and *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1425 (9th Cir. 1995)). In antitrust cases, the Article III inquiry asks whether the plaintiff "has suffered an injury which bears a causal connection to the alleged antitrust violation." *Id.* The injury alleged must be "concrete and particularized" and "actual or imminent," rather than merely "conjectural or hypothetical." *Lujan*, 504 U.S. at 560. (citations omitted).

Factual allegations of injury must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 550 U.S. 544, 167 L. Ed. 2d 929 (2007). Something beyond the mere possibility of loss

---

[4] In addition to injury-in-fact, Plaintiffs must allege antitrust injury, or "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977); *see also Am. Ad Mgmt. Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Under Ninth Circuit law, to show antitrust injury, Plaintiffs must show "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is the type the antitrust laws were designed to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055. Plaintiffs, like the FTC, cannot allege anticompetitive effects (*see* Appendix 1 at 20-23); thus, they necessarily have failed to allege antitrust injury as well.

causation must be alleged. *Id.*; *see also Rick-Mik Enter., Inc. v. Equilon Enter. LLC*, 532 F.3d 963, 970 (9th Cir. 2008) ("[I]n antitrust matters, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" (quoting *Twombly*, 127 S. Ct. at 1965)); *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 808 (E.D. Va. 2007) (citing *Twombly*, 127 S. Ct. at 1965; stating that plaintiffs failed to "allege facts creating a plausible inference that an injury in fact ha[d] occurred"). This "threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase." *Asahi Glass Co., Ltd. v. Pentech Pharms, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003).

Thus, the viability of Plaintiffs' claims depends upon allegations that plausibly and concretely demonstrate that they would have paid a lower price for AndroGel® absent the settlements. Here, Plaintiffs' factual allegations do not meet this requirement. Plaintiffs allege that entry would have occurred in "September 2006 (and, at all events, substantially earlier than the 2015 and 2016 dates provided for in the anticompetitive agreements between the Generic Defendants)." (FAC ¶ 10). They also allege that Defendants would have "allow[ed] generics to enter by September 2006 with licenses from Solvay, earlier than under the agreements at issue." (*Id.* ¶ 113.) For the reasons discussed below, these allegations are insufficient to establish injury in fact.

### 1. Plaintiffs Do Not Adequately Allege that Solvay Would Have Lost or Abandoned the Patent Litigation.

Plaintiffs do not allege that Solvay would have lost the patent litigation or that Watson and Par/Paddock would have entered "at risk."[5] Instead, they settle

---

[5] The possibility that Watson and Paddock might by now have entered at risk is meaningless without proof that they also would have prevailed in the patent litigation. As explained in Appendix 1, at-risk entry followed by a Solvay victory in the patent litigation does not provide a competitive benefit to consumers that antitrust law is meant to protect, any more than the consumer benefit from the low prices of stolen black-market goods. (Appendix 1 at 20-23.)

for citing the Generics' arguments in the patent litigation and conclude that "[i]f either Watson or Par/Paddock had prevailed on any one of these issues, Solvay's '894 patent would not have prevented generic entry." (*Id.* ¶ 120.) Nowhere do the Plaintiffs even allege that the Generics would have pursued the case to a final judgment. Of course, even if the Generics had prevailed on *all* of these issues, which they made in support of their motions for partial summary judgment, they would have defeated only 30 of the '894 Patent's 42 claims. The most, then, that they can say when they address the merits of the patent litigation head-on is that it is merely "unlikely" that Solvay would have prevailed. (*Id.* ¶ 120.) This is insufficient. *See Asahi*, 289 F. Supp. 2d 986, 994 (N.D. Ill. 2003) ("[W]hether [the theory opposing reverse-payment settlements] is a sound theory may be doubted, since if settlement negotiations fell through and the patentee went on to win his suit, competition would be prevented to the same extent."). Nor do they allege that, even without a judgment against it, Solvay might have chosen to abandon the litigations. Because it is speculative for courts to attempt to determine the outcome of pending litigation, Plaintiffs have made no allegations that could support a finding that the Agreements injured them in fact. (*See* Appendix 1 at 21-22.)

### 2. Plaintiffs Do Not Adequately Allege that Defendants Would Have Entered Into A Different Settlement With An Earlier Date.

Alleging no facts in support, Plaintiffs make the conclusory allegation that, but for the business arrangements, the Defendants would have settled the patent litigations with pre-2015 licenses. However, such a conclusory allegation is purely speculative. In the absence of the business arrangements, it is equally possible that no settlement would have been reached. (*Id.* at 20-23.) Or, it is possible that the entry date would have been later if, for example, summary judgment had been denied and/or Solvay had received a favorable claim construction. Plaintiffs' speculation about what might have been in theory cannot support a finding of injury in

fact. *Cf. Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (in reviewing class action settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"); *Linney v. Cellular Ala. P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (same) (citing *Officers for Justice*, 688 F.2d at 625; "[a]ppellants offer nothing more than speculation about what damages 'might have been' won had they prevailed at trial").

Because Plaintiffs have failed adequately to allege injury-in-fact, a prerequisite to this Court's jurisdiction, the FAC must be dismissed. *See Gerlinger*, 526 F.3d at 1255-56 (affirming summary judgment for defendants on antitrust claim where plaintiff failed to show injury-in-fact caused by defendants' agreement).

## IV. CONCLUSION

For the foregoing reasons, including the reasons in Appendix 1, the Court should dismiss this action.

Dated: April 6, 2009

Respectfully submitted,

By: /s/ Ronald C. Redcay
Ronald C. Redcay
ARNOLD & PORTER LLP

Mark W. Ryan
John Roberti
Christopher J. Kelly
MAYER BROWN LLP
Attorneys for Defendant
Solvay Pharmaceuticals, Inc.

By: /s/ Douglas B. Adler
Steven C. Sunshine
Douglas B. Adler
Julia K. York
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Attorneys for Defendant
Watson Pharmaceuticals, Inc.